IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:12CR281 |
| Plaintiff, ) | |
| ) | FINDINGS AND |
| v. ) | RECOMMENDATION |
| ) | |
| SHAWN K. MORGAN, ) | |
| ) | |
| Defendant. ) | |

    This matter is before the court on the Motion to Suppress (Filing No. 18) filed by defendant Shawn K. Morgan (Morgan). Morgan is charged in the Indictment with the April 17, 2012, possession of methamphetamine with intent to distribute (Count I) in violation of 21 U.S.C. § 841(a)(1). See Filing No. 1. The Indictment also alleges a Forfeiture Allegation under 21 U.S.C. § 853 relating to $1780. *Id.* Morgan seeks to suppress evidence seized from his person and vehicle and all statements obtained by officers of the Omaha Police Department (OPD) on April 17, 2012.

    The court held a hearing on the motion on October 4, 2012. Morgan was present with his counsel, J. William Gallup. The United States was represented by Special Assistant U.S. Attorney Martin J. Conboy, IV. The court heard the testimony of OPD Officer Aram Normandin (Officer Normandin). A transcript (TR.) of the hearing was prepared and filed on October 8, 2012, at which time the matter was deemed submitted. See Filing No. 28.

**FINDINGS OF FACT**

    Officer Normandin, an officer with OPD for approximately two years, was conducting a robbery-assignment patrol on April 17, 2012 (TR. 3, 9). Specifically, due to several recent robberies, Officer Normandin and Officer Josh Downs (Officer Downs) were conducting a patrol around businesses open 24-hours a day looking for any suspicious activity or vehicles (TR. 3, 9). As part of the patrol at 12:45 a.m., Officer Normandin drove into the parking lot of the HyVee grocery store near 79th and Cass streets (TR. 4). The

HyVee had not been one of the recently robbed businesses, but the officers' sergeant had specifically listed it in the area to patrol (TR. 10).  Although it was dark outside, the parking lot was well-lighted as all of the lights were on (TR. 5).  The HyVee building is located on the north side of the parking lot (TR. 4).  Officer Normandin drove through the parking lot traveling east, then south (TR. 4).  Officer Normandin observed a black sedan with tinted windows parked in the southeast corner of the parking lot "about as far away from the store as you could possibly get," despite the parking lot having only about ten other patron's vehicles parked near the entrance (TR. 4, 24).  The sedan was backed into a parking stall next to marked HyVee store vehicles (TR. 4, 11).  Officer Normandin had previously patrolled the parking lot many times and did not normally see a vehicle parked amongst the HyVee store vehicles (TR. 4).  Officer Downs noticed the vehicle's occupants were ducked down so only the tops of their heads were visible (TR. 4, 12, 14).

The officers stopped, exited their patrol vehicle, and approached the parked vehicle (TR. 5-6).  As the officers approached the hood of the vehicle, the parked vehicle's driver, later identified as Morgan, sat up and immediately stuck his hands under his seat (TR. 6, 8).  The officers drew their service weapons, pointed them at the occupants, and ordered Morgan to take his hands out from under the seat (TR. 6).  Morgan looked straight at the officers but failed to obey the officers' command (TR. 6).  Morgan put his hands up after the officers' second request (TR. 6).  Officer Normandin approached the driver's side of the vehicle and the officers removed and handcuffed the occupants (TR. 6, 17). The two other occupants of the vehicle were young females (TR. 8).  There were open containers of alcohol near the females' feet (TR. 8).  The female sitting in the backseat of the vehicle had obviously been drinking (TR. 8).  The female occupants acted very nervous and repeatedly stated they did not know what was going on (TR. 8).

Based on his concern a gun may be in the vehicle, immediately after removing and handcuffing Morgan, Officer Normandin reached under the driver's seat and located a black metal box, measuring roughly six by ten inches (TR. 6, 19).  The box was large enough to conceal a firearm (TR. 7).  Officer Normandin was not initially concerned about narcotics because he had not previously discovered narcotics concealed in a lock box in a vehicle (TR. 7).  Officer Normandin placed the box on the top of the vehicle and said,

"What is this?" (TR. 7). Morgan responded, "there's meth in there" and "I'm a dealer" (TR. 7). Based on these statements, at approximately 1:00 a.m. the officers advised Morgan of his ***Miranda*** rights (TR. 9). Officer Normandin opened the box, finding methamphetamine, $1780 in cash, and another smaller container holding a white powdery substance (TR. 8). Although the box employed a three-combination tumbler lock, it was not locked (TR. 7). Morgan explained he was a drug dealer from Fremont who did deals in Omaha for which there was methamphetamine in the box (TR. 9). Officer Normandin asked Morgan what the substance was and Morgan said it was cocaine (TR. 8). Morgan indicated he was concerned about the other occupants of the vehicle getting into trouble (TR. 8). The methamphetamine and cocaine field-tested positive (TR. 9). At that time, Officer Normandin formally placed Morgan under arrest (TR. 9).

## LEGAL ANALYSIS

Morgan argues evidence found in the vehicle and statements he made should be suppressed because (1) no probable cause existed for his arrest at the time officers approached him and he was handcuffed and (2) no probable cause or other legal justification exists for the warrantless, non-consensual vehicle search.

### A. Officers' Initial Contact

Morgan argues the officers did not have probable cause to approach him as he sat parked in a vehicle in the HyVee parking lot, therefore the contact was an unconstitutional arrest. The government argues the initial contact was consensual or supported by reasonable suspicion.

"Not every encounter between a police officer and a citizen constitutes a seizure under the Fourth Amendment." *United States v. Mabery*, 686 F.3d 591, 595 (8th Cir. 2012). Taking the "position that a person is 'seized' for Fourth Amendment purposes whenever an officer interrupts what that person was otherwise doing is absurd." *United States v. Tarantola*, 332 F.3d 498, 499 (8th Cir. 2003). Merely attempting to attract a person's attention to further investigate suspected criminal behavior "does not implicate any Fourth Amendment interest, does not amount to a seizure, and thus falls outside the

ambit of the Fourth Amendment." *Id.* at 499-500 (knocking on glass door of laundromat is not a seizure). More specifically, an officer's attempt to make contact with individuals occupying a vehicle parked in a public place does not constitute a seizure. **See** *Mabery*, 686 F.3d at 596-97 (citing cases) (finding no seizure where officer shined a spotlight on vehicle from the street); **see also** *United States v. Barry*, 394 F.3d 1070 (8th Cir. 2005) (finding no seizure where officer knocked on vehicle's window as it was parked in vacant parking lot behind a mall).

Here the officers were patrolling public areas, including the parking lots of 24-hour businesses, at 12:45 a.m. due to recent robberies near the HyVee (TR. 3-4, 9). The officers observed a black sedan with tinted windows parked "about as far away from the store as you could possibly get," in an area where typically only marked HyVee store vehicles parked, despite a relatively empty parking lot (TR. 4, 11, 24). In addition, Officer Downs noticed the vehicle's occupants were ducked down so only the tops of their heads were visible (TR. 4, 12, 14). Based on the circumstances, the officers did not unconstitutionally seize Morgan when they stopped their cruiser and approached the sedan. Unlike the situations in *Barry* and *Mabery*, the officers here did not shine a light on the sedan or knock on the window to gain the occupants' attention.

### B. Investigative Detention

The initial contact almost immediately became an investigative detention. An investigative detention must be supported by a reasonable articulable suspicion of criminal activity. *United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012).

> [The Eighth Circuit] has summarized the standards used to consider whether reasonable suspicion exists as follows:
> The standard of articulable justification required by the fourth amendment for an investigative, *Terry*-type seizure is whether the police officers were aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warranted suspicion that a crime was being committed. In assessing whether the requisite degree of suspicion exists, we must determine whether the facts collectively establish reasonable suspicion, not whether each particular fact establishes reasonable suspicion. The totality of the circumstances -- the whole picture -- must be taken into

> account. We may consider any added meaning certain conduct might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals. It is not necessary that the behavior on which reasonable suspicion is grounded be susceptible only to an interpretation of guilt, however, the officers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a "hunch" or on circumstances which describe a very broad category of predominantly innocent [people].

*United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998) (internal citations and quotations omitted). "In forming a basis for suspicion, officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Maltais*, 403 F.3d 550, 555 (8th Cir. 2005) (internal quotation omitted). The Supreme Court has held "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124 (unprovoked flight at sight of officers in high crime area reasonably aroused officers' suspicions). Additionally, courts have held evasive and erratic behavior can contribute to a finding of reasonable suspicion. *United States v. Montero-Camargo*, 208 F.3d 1122, 1136-37 (9th Cir. 2000) (suspect took evasive and erratic path in an apparent attempt to avoid police, which was relevant to reasonable suspicion analysis). The Supreme Court noted that even where all of the suspect's conduct is lawful, if the conduct is ambiguous and susceptible to an innocent explanation as well as creating a reasonable suspicion of criminal activity, police officers may detain the individual to resolve the ambiguity. *Wardlow*, 528 U.S. at 125.

The "protection of police and others can justify protective searches when police have a reasonable belief . . . that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). If an "officer [has] an objectively reasonable concern for officer safety or suspicion of danger" the officer may "conduct a protective sweep of the vehicle . . . to search for dangerous weapons that the suspect or other occupants might later access." *United States v. Smith*, 645 F.3d 998, 1002-03 (8th Cir. 2011) (**citing** *Long*, 463 U.S. at 1045-52). A valid "search [for the purposes of officer safety] extends to closed containers, such as [a] pouch, that [is]

found within the vehicle's passenger compartment." *United States v. Shranklen*, 315 F.3d 959, 963 (8th Cir. 2003). "[A]n officer may search a container found in a vehicle when that container might hold a weapon." *Id.*

Here the officers were patrolling an area known for several recent robberies (TR. 3-4, 9-10). Morgan, who was parked in a secluded area of a parking lot in the middle of the night, ducked in the vehicle to avoid being seen by passers-by (TR. 4). When police officers approached him, Morgan sat up and immediately stuck his hands under his seat as if to conceal something (TR. 6, 8). When police officers told him raise his hands, Morgan looked directly at the officers but did not comply (TR. 6). Officer Normandin was concerned Morgan was attempting to obtain or conceal a firearm (TR. 6).

The officers had a reasonable concern for their safety based on the recent robberies in the area and Morgan's conduct. The officers placed the occupants of the vehicle in handcuffs, which was reasonably necessary to determine if the occupants had a firearm in the vehicle. Although additional officers arrived at the scene within minutes of Officers Normandin and Downs, the two officers acted reasonably to handcuff the three occupants who outnumbered the officers, did not initially comply with commands, and who appeared to have been drinking alcohol. **See** *United States v. Newell*, 596 F.3d 876, 879-80 (8th Cir. 2010) (finding officers' acts of opening car door and removing occupants reasonable when occupants failed to comply with instructions); **also see** *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008) ("[O]fficers may take steps reasonably necessary to protect their personal safety."). The fact that all three occupants were already removed from the vehicle and handcuffed did not eliminate the necessity of the search. **See** *United States v. Peoples*, 925 F.2d 1082, 1087 (8th Cir. 1991) (holding the "officers' act of immobilizing the suspects outside the van did not obviate the necessity of the search"); **see also** *Stachowiak*, 521 F.3d at 854 (finding the officer's search of defendant's vehicle for a weapon while the defendant was handcuffed outside the vehicle conformed with the principles of *Terry* and *Long*).

Officer Normandin immediately reached into the area he reasonably believed Morgan had attempted to obtain or conceal an item from the officers. Officer Normandin located a box large enough to conceal a firearm and asked Morgan about the contents.

Morgan stated the box contained methamphetamine. After reading Morgan his *Miranda* rights, Officer Normandin opened the box to ensure the box did not conceal a weapon and confirm the presence of methamphetamine. Even if Officer Normandin was mistaken about the contents in the box, he made a reasonable assessment of the facts, which does not detract from the finding that Officer Normandin acted reasonably in detaining Morgan and searching under the car seat and box for purposes of officer safety. A detention based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. **See** *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Shranklen*, 315 F.3d at 964 ("[I]f a valid search for weapons during a proper investigative stop of a vehicle results in the discovery of drugs rather than weapons, the officers need not ignore the drugs, and the Fourth Amendment does not require their suppression."). Therefore, the officers had reasonable suspicion to detain Morgan and were entitled to conduct a protective sweep of Morgan's vehicle, and subsequently search the box under Morgan's seat, to determine whether Morgan concealed a firearm. When the substances field-tested positive, the officers had probable cause to arrest Morgan.

Morgan contends the vehicle's search, including the box, cannot constitute a permissible search incident to his arrest because (1) he had been removed from the vehicle and handcuffed, and (2) the premature arrest cannot be justified based on the possible infraction due open alcoholic beverage containers found in the vehicles. **See** TR. 29-30, 37-39. In support of these arguments, Morgan relies on *Knowles v. Iowa*, 525 U.S. 113, 114 (1998) and *Arizona v. Gant*, 556 U.S. 332, 336 (2009). **See** TR. 37; Filing No. 22 - Reply p. 2-3. As discussed above, the officers' search was based on safety concerns under *Terry*, rather than justified as a search incident to arrest. Accordingly, neither *Knowles* nor *Gant* require suppression in this matter. Even so, *Knowles* precludes the government from justifying the search on the officers' unexercised authority to arrest Morgan when they observed open containers in the vehicle.

In *Knowles*, an officer stopped a motorist for speeding. *Knowles*, 525 U.S. at 114. Although Iowa law permitted the officer to arrest the motorist in the situation, the officer elected to issue a citation. *Id.* Nevertheless, the officer conducted a full search of the vehicle based on Iowa law allowing a "search incident to citation" exception to the Fourth

Amendment's warrant requirement. *Id.* at 114-15. The United States Supreme Court determined the vehicle's search violated the Fourth Amendment "where the concern for officer safety is not present to the same extent [when issuing a traffic citations as with an arrest] and the concern for destruction or loss of evidence is not present at all." *Id.* at 118. The *Knowles* court noted no additional evidence for the infraction of speeding need be discovered or preserved subsequent to issuing the citation. *Id.*

Officer Normandin was reasonably concerned about the safety of himself and Officer Downs based on the time, location of the vehicle, and Morgan's conduct. Additionally, the impetus for the investigation did not terminate upon removing Morgan from the vehicle. The officers' suspicions increased as they approached Morgan. The removal of Morgan and the females from the vehicle led to the discovery of open alcoholic beverage containers, methamphetamine, and cocaine. From the time the officers viewed the open containers, they may have had authority to issue a citation or arrest the occupants, however there is insufficient evidence in the record to support reliance on such arrest to justify the search in this case. Although the underlying facts of *Knowles* are distinguishable, the holding remains applicable as an officer may not justify a search incident to arrest merely because he *could have* arrested or cited the driver for an offense when he did not arrest the driver for the offense.

Similarly, Morgan's reliance on *Arizona v. Gant* is misplaced. In *Gant*, the defendant was arrested for driving with a suspended license, handcuffed, and placed in the patrol cruiser. *Gant*, 556 U.S. at 336. Officers searched the vehicle incident to the arrest and discovered a gun and cocaine. *Id.* The United States Supreme Court held "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. The holding from *Gant* does not require suppression in this case. The officers did not have probable cause to arrest Morgan prior to the vehicle's search. Officer Normandin initiated his search of the vehicle and the box out of concern for officer safety. The reasonable concern would not dissipate absent a search of the vehicle for weapons, despite Morgan's initial removal from the vehicle, because the circumstances of this case justified the

officer's reasonable belief that Morgan posed a danger if he were permitted to reenter his vehicle. **See** *Long*, 463 U.S. at 1049 (noting a suspect is no less dangerous simply because he is not arrested). The officers permissibly searched under the driver's seat of the vehicle believing Morgan was dangerous and might gain immediate control of a weapon. **See** *id.*

**C.    Statements**

Morgan seeks to suppress statements he made because the statements constitute fruit of the poisonous tree. As stated above, the court finds no constitutional infirmities with the officers' initial contact with Morgan, subsequent investigative detention, and search. However, the court will analyze whether Morgan's statements were made in contravention of the Fifth Amendment and whether the fruit of the poisonous tree doctrine applies to evidence subsequently obtained.

Under the Fifth Amendment, the Self-Incrimination Clause provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." *U.S. Const. amend. IV*. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 637 (2004). The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278, 285-87 (1936). "The requirements of *Miranda* arise only when a defendant is both in custody and being interrogated." *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005).

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (*quoting Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation and citation omitted); **see also** *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). The court must evaluate the objective circumstances surrounding the interrogation, and

whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); **see** *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) ("[T]he initial determination depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). The Eighth Circuit has identified several factors, which act to mitigate or aggravate the custodial atmosphere, used to determine whether an interview is custodial. *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011). Some specific factors to evaluate are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police-dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Aldridge*, 664 F.3d at 711. The ultimate test is whether a reasonable person in that position would have felt free to end the interview. *United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006).

"Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (**quoting** *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

> Interrogation occurs when a law enforcement officer engages in either express questioning or its functional equivalent, which includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*United States v. Hernandez-Mendoza*, 600 F.3d 971, 976-77 (8th Cir. 2010) (**citing** *Innis*, 446 U.S. at 301). "[S]tatements made by a custodial suspect in response to interrogation are inadmissible unless the suspect has voluntarily, knowingly, and intelligently waived his right against self incrimination." *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009). However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). When determining whether a statement is voluntary, the court considers a totality of the circumstances, including:

> both the characteristics of the accused and the details of the interrogation . . . the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Houston v. Lockhart*, 866 F.2d 264, 266 (8th Cir. 1989) (**quoting** *Hall v. Wolff*, 539 F.2d 1146, 1150-51 (8th Cir. 1976)). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011).

After Officer Normandin removed the box from the vehicle, he asked Morgan, "What is this?" (TR. 7). Morgan responded, "there's meth in there" and "I'm a dealer" (TR. 7). Officer Normandin then read Morgan his *Miranda* rights (TR. 9). Morgan explained he was a drug dealer from Fremont who did deals in Omaha for which there was methamphetamine in the box (TR. 9). In the larger container Officer Normandin found a smaller container holding a white powdery substance (TR. 8). Officer Normandin asked Morgan what the substance was and Morgan said it was cocaine (TR. 8). Morgan indicated he was concerned about the other occupants of the vehicle getting into trouble (TR. 8).

Morgan's statements of "there's meth in there" and "I'm a dealer" were made prior to *Miranda* warnings. Morgan was handcuffed and several officers were at the scene. Morgan was not informed he was free to leave or that the questioning was voluntary. A reasonable person in Morgan's position would not have felt free to leave or end the

interview with Officer Normandin.  At the time Officer Normandin asked Morgan about the contents of the box, Morgan was in custody.  Additionally, although Officer Normandin's question appears perfunctory, his question was reasonably likely to elicit an incriminating response from Morgan.  Therefore, Morgan was in a custodial interrogation.  Morgan did not intelligently, knowingly, and voluntarily waive his right against self-incrimination. For these reasons, Morgan's pre-*Miranda* statements of "there's meth in there" and "I'm a dealer" are inadmissible and should be suppressed.

The court next considers whether the seizure of evidence discovered within the box and Morgan's post-*Miranda* statements were the fruit of the Fifth Amendment constitutional violation or were obtained by "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

First, the narcotics subsequently discovered within the box should not be suppressed as fruit of the poisonous tree.  "[T]he exclusionary rule and the fruits doctrine apply differently to *Miranda* violations under the Fifth Amendment than to unreasonable searches under the Fourth Amendment." *United States v. Villalba-Alvarado*, 345 F.3d 1007, 1010 (8th Cir. 2003) (**citing** *Oregon v. Elstad*, 470 U.S. 298, 304-07 (1985)); **see** *Dickerson v. United States*, 530 U.S. 428, 441 (2000) (noting "unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment").  "[T]he exclusionary rule as applied under the Fifth Amendment does not require the suppression of physical evidence derived from a voluntary, non-*Mirandized* statement."  *Villalba-Alvarado*, 345 F.3d at 1013.  Assuming Officer Normandin discovered the physical evidence because of Morgan's statements that "there's meth in there" and "I'm a dealer," the physical evidence should not be suppressed because his statements appear voluntary, although Morgan's statements were made while in custody. Alternatively, the physical evidence Officer Normandin discovered should not be suppressed because the inevitable discovery doctrine applies.  "Evidence is purged of taint and should not be suppressed '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'"  *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (**quoting** *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  The inevitable discovery exception applies when:

> the government proves by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

*McManaman*, 673 F.3d at 846.

Officer Normandin would have lawfully searched the box under Morgan's seat because of officer safety even if Morgan did not inform Officer Normandin narcotics were contained within the box. Officer Normandin investigated what he reasonably believed was a box concealing a weapon. Officer Normandin's reason for searching the box was independent of Morgan's statement that methamphetamine was in the box. Therefore, the evidence discovered within the box should not be suppressed.

Second, Morgan's post-*Miranda* statements should not be suppressed. Morgan may argue "the initial violation placed an irreparable degree of psychological compulsion upon a Defendant, who, by having 'let the cat out of the bag,' could not thereafter make a truly voluntary statement concerning the same subject matter." **See** *Villalba-Alvarado*, 345 F.3d at 1010. However, the United States Supreme Court rejected the extension of the fruits doctrine under the "cat out of the bag" theory:

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process . . . . Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Villalba-Alvarado*, 345 F.3d at 1010 (**quoting** *Elstad*, 470 U.S. at 309). Therefore, "a subsequent, warned statement [is] to be judged under the pre-*Miranda* standard of voluntariness." *Villalba-Alvarado*, 345 F.3d at 1010-13.

Morgan does not argue his post-*Miranda* statements, that he was drug dealer from Fremont, which is why he had methamphetamine, and the box also contained cocaine, were made involuntarily. There is no evidence Morgan invoked his right to remain silent

or that the officers subjected Morgan to prolonged questioning or coerced confessions from him.  Morgan's statements appear voluntary, motivated by concern for the two females in the vehicle with him, and his knowledge the officers discovered incriminating evidence.  Because Morgan's statements do not appear to be compelled either by the officers' failure to initially provide *Miranda* warnings or other officer conduct or misconduct, Morgan's post-*Miranda* statements should not be suppressed.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that:**

Morgan's Motion to Suppress (Filing No. 18) is granted with respect to the pre-*Miranda* statements and denied in all other respects.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 25th day of October, 2012.

BY THE COURT:

 s/ Thomas D. Thalken  
United States Magistrate Judge