IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SHAWN K. MORGAN,<br><br>　　　　　　　Defendant. | 8:12CR281<br><br>**SENTENCING MEMORANDUM** |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on February 21, 2014.

**I.　Background**

Defendant was originally charged with possession with intent to distribute 5 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and(b)(1). Filing No. 1, Indictment. That offense carries a mandatory minimum sentence of five years and a maximum of forty years. He challenged the evidence against him in a motion to suppress that was granted by the court. Filing No. 18, Motion to Suppress; Filing No. 29, Findings and Recommendation; Filing No. 35, Memorandum and Order. The court's order suppressing the evidence was later reversed by the Eighth Circuit. See Filing No. 42, Interlocutory Appeal; Filing No. 57, Eighth Circuit Court of Appeals opinion.

The Indictment in this case was filed on August 22, 2012. Mr. Morgan was originally placed on pretrial release on August 29, 2012. While on pretrial release, he participated in the outpatient chemical-dependency treatment program at Stephen Center in Omaha, Nebraska. He tested positive for drug use twice in November 2012. He admitted to allegations that he violated the conditions of his pretrial release and the

court so found.  He was allowed to remain on bond but was ordered to follow the recommendations of Pretrial Services with respect to drug treatment.  He was ultimately discharged unsuccessfully from the treatment program on February 18, 2013.  Subsequently, his pretrial release was revoked on June 21, 2013.

On November 22, 2013, the government filed a one count Information charging the defendant with possession with intent to distribute actual methamphetamine, with no quantity specified.[1]  Filing No. 66.  The offense carries a statutory term of imprisonment of zero to twenty years.  21 U.S.C. § 841.  The defendant waived Indictment and entered a plea of guilty to the charge in the Information.  Filing No. 69, Text Minute Entry.  The court accepted the defendant's plea and directed the United States Office of Probation (hereinafter, "the Probation Office") to prepare a Presentence Investigation Report (hereinafter, "PSR") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines").  Id.

In the PSR, the Probation Office identified U.S.S.G. § 2D1.1 as the applicable Guidelines base offense level provision and determined that the defendant's base offense level was 28, based on a quantity determination of between 26.25 grams of actual methamphetamine.  Filing No. 79, PSR (sealed) at 6-7.  It then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1 (a) & (b),

---

[1] At the sentencing hearing the Assistant U.S. Attorney stated that the Information was filed as a result of the Attorney General's recent modification of the Department of Justice's charging practices.  On August 12, 2013, Attorney General Eric Holder "mandated a modification of the Justice Department's charging policies so that certain low-level, nonviolent drug offenders who have no ties to large-scale organizations, gangs, or cartels will no longer be charged with offenses that impose draconian mandatory minimum sentences."  Eric H. Holder, Jr., Att'y Gen. of the United States, Remarks at the Annual Meeting of the ABA's House of Delegates (Aug. 12, 2013), available at http://www.justice.gov/iso/opa/ag/speeches/2013/ag–speech–130812.html (last visited Oct. 9, 2013); see Memorandum from Eric H. Holder, Jr., Att'y Gen. of the United States, to U.S. Att'ys and Assistant U.S. Att'ys for the Criminal Div. re: Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013), available at http://big.assets.huffingtonpost.com/HolderMandatoryMinimums Memo.pdf (last visited Feb. 28, 2014).

resulting in a total offense level of 25.  *Id.*  The defendant's criminal history was calculated to be criminal history category II, based on the assessment of 2 criminal history points for a conviction for "Attempt of a Class 3A or 4 Felony amended from Possession of Controlled Substance" on June 22, 2012, for which he was sentenced on March 18, 2013, to 60 days in jail, with credit for 39 days.[2]  *Id.* at 10-13.  No other criminal history points were assessed because the defendant has only traffic citations and misdemeanor convictions for which he was fined or received a sentence of fewer than 30 days.  At criminal history category II and base offense level 25, the defendant's sentencing range under the Guidelines is 63 to 78 months.  *Id.* at 23.

The following facts are set out in the PSR.  *See id.* at 4-13.  The offense conduct is based on the prosecutor's version of events.  *Id.* at 5.  On April 17, 2012, Omaha Police Department officers were patrolling near the area of 7910 Cass Street and observed a vehicle parked in a grocery store parking lot.  *Id.*  The officers approached the vehicle, they observed the driver, Shawn Morgan, reaching under the seat.  *Id.*  Defendant Morgan was removed from the vehicle and a lock box was discovered under the seat.  *Id.*  Inside, officers found approximately 30 grams (95%) of methamphetamine and 16.4 grams of cocaine.  *Id.*  The defendant admitted possessing the drugs in a presentence investigation interview, but stated they were "primarily for personal use, but he would sell some to support his and his wife's drug habit."  *Id.* at 6.

The defendant is thirty-six years old.  *Id.* at 2.  He is married and has two children, ages nine and twelve.  *Id.* at 9-10.  His wife is currently incarcerated for a shoplifting offense.  *Id.* at 10.  She has a history of substance abuse and has been

---

[2] In the PSR, this conviction was listed as a conviction in Dodge County District Court, but the parties agreed that the conviction was actually in Douglas County.

3

addicted to methamphetamine for over 10 years.  *Id.*  He stated he intends to divorce her after he serves his sentence.  *Id.*  He is currently in a relationship with a woman with no criminal record or history of drug use.  *Id.* at 11.

He completed tenth grade and obtained his GED.  *Id.* at 12.  He was employed as an over-the-road truck driver 1999 to 2011, at one time earning close to $200,000 per year.  *Id.* at 13.  While on pretrial release he worked as a yard horse driver, but lost that job for violating his pretrial release.  *Id.*

He completed a substance abuse evaluation in September 2012 and reported the he first consumed alcohol at age 16 and marijuana at age 18.  *Id.* at 11.  From age 18 to 34 he drank only once a month and has only used marijuana a few times in his life.  *Id.*  He reported first using methamphetamine at age 34, smoking the drug two to three times weekly and using 1.5 grams over a one-week period.  *Id.*  He began using cocaine at age 35, sometimes using it in lieu of methamphetamine, at the same frequency and amount.  *Id.*  He has been diagnosed with a dependence to amphetamine and cocaine.  *Id.* at 12.  He received chemical dependency treatment a the Stephen Center outpatient program in Omaha, but did not successfully complete treatment.  *Id.*  Intensive outpatient treatment was recommended, but he could not afford it.  *Id.*

The government accepted and adopted the findings in the PSR at the sentencing hearing.  The defendant moved for a downward departure for overstatement of criminal history under U.S.S.G. § 4A1.3(b)(1) and/or a variance from the Guidelines.  Filing No. 73.  He argued that the June 2012 conviction was related to the instant offense and should not result in the assessment of any criminal history points.  He also moved for a

two-level "safety valve" reduction under U.S.S.G. § 2D1.11. Further, he argued for an outside-the-Guidelines sentence or variance in consideration of the sentencing factors outlined in 18 U.S.C. § 3553(a).

## II.  Law

Although a sentencing court must give respectful consideration to the Sentencing Guidelines, the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), permits the court to tailor the sentence in light of other statutory concerns as well. *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011). The district court follows the sentencing framework set forth by the Supreme Court in *Gall v. United States*, 552 U.S. 38, 49-51 (2007). *See United States v. Washington*, 515 F.3d 861, 865-66 (8th Cir. 2008) ("We urge district courts to continue to engage in the three-step process of first ascertaining the applicable Guidelines range, then considering any permissible departures within the Guidelines' structure, and finally, deciding whether a non-Guidelines sentence would be more appropriate under the circumstances pursuant to § 3553(a)."). The first step is to calculate the defendant's advisory Guidelines sentencing range, which provides "the starting point and the initial benchmark" for any sentence. *Gall*, 552 U.S. at 49. Next, the court determines whether any traditional Guidelines departures are warranted. *Washington*, 515 F.3d at 865. Finally, the court considers whether to vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50; *United States v. VandeBrake*, 679 F.3d 1030, 1039 n. 7 (8th Cir. 2012).

The court does not presume that the Guidelines range is reasonable, but makes an individualized assessment based on the facts of each case. *Gall*, 552 U.S. at 50

(requiring district courts to consider all of the § 3553(a) factors and "make an individualized assessment based on the facts presented."). If the court determines that a variance is appropriate, it must consider the extent of the deviation and ensure that there is a correspondingly compelling justification. *Id.* Ultimately, the court must impose a sentence "in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in § 3553(a)(2)."[3] *Kimbrough v. United States*, 552 U.S. 85, 89 (2007).

District courts are entitled to reject and vary categorically from the Guidelines based on a policy disagreement with those Guidelines. *Spears v. United States*, 555 U.S. at 261, 266 (2009); *United States v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009). The Sentencing Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for drug crimes. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment"), Executive Summary at 15, 72-73, *available at* http://www.ussc.gov/ Research_and_Statistics/Research_Projects/Miscellaneous/15_Yer_Study/index.cfm (last visited February 28, 2014); *Kimbrough*, 552 U.S. at 97. Instead, it anchored the

---

[3] Those are:

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

Guidelines to the weight-driven mandatory minimum provisions established by the 1986 Anti-Drug Abuse Act.  *See* United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991) (hereinafter, "Mand. Min. Rep't"), Summary at ii; Rep't at 17 n.58, *available at* http://www.ussc.gov/Legislative_and_Public_ Affairs/Congressional_ Testimony_and_Reports/Mandatory_Minimum_Penalties/199108_RtC_Mandatory_Mini mum.htm (last visited Feb. 28, 2014); *Kimbrough*, 552 U.S. at 95 (stating "[t]he 1986 Act uses the weight of the drugs involved in the offense as the sole proxy to identify 'major' and 'serious' dealers."); *see Chapman v. United States*, 500 U.S. 453, 461 (1991) (stating that the Anti-Drug Abuse Act's "market-oriented" approach, created a penalty scheme intended to punish large-volume drug traffickers severely).

The Guidelines provide that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1).  Under the "safety-valve," when a defendant who was convicted of a controlled substance offense meets the criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5), he receives a two-level decrease in his offense level for sentencing purposes.[4]   *See* U.S.S.G. § 2D 1.1(b)(16).  The

---

[4] Those criteria, mirroring those found in 18 U.S.C. § 3553(f)(1)-(5) are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

7

defendant bears the burden of establishing eligibility for safety-valve relief.  *United States v. Razo-Guerra*, 534 F.3d 970, 974 (8th Cir. 2008).  Before granting a downward departure for an overstated criminal history, a district court must first calculate the defendant's criminal history points.  See *United States v. Barrera*, 562 F.3d 899, 903 (8th Cir. 2009) (citing U.S.S.G. § 5C1.2(a)(1)).  The district court's reduction of criminal history category under § 4A1.3 does not delete criminal history points for the purposes of the safety valve.  See *United States v. Langmade*, 236 F.3d 931, 932 (8th Cir. 2001).

### III.  DISCUSSION

#### A.  Initial Guidelines Calculation

The court generally accepts the facts set forth in the PSR.  The court finds the defendant's base offense level is 25.

#### B.  Departure

The court finds that a criminal history category of II overstates the defendant's criminal history.  There is reliable information that indicates the 2012 conviction was part and parcel of the same incident and course of events at issue here.  The defendant was arrested on this charge on August 28, 2012.  The PSR indicates that he was arrested on April 16, 2012, in Douglas County on charges for conduct that forms the basis of the his criminal charge in this case.  Ostensibly, he was arrested in Dodge County on June

---

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a)(1)-(5).

8

22, 2012, although the parties concede he was charged in Douglas County, not Dodge County. He was not sentenced for that offense until March 18, 2013. At the sentencing hearing, the defendant stated that the June 2012 arrest was the result of a search of his home in Fremont, Nebraska. It appears to the court that the offenses are related.

For the reasons discussed below in connection with a sentence outside the Guidelines, the court finds that the defendant's motion for a downward departure for overstatement of criminal history should be granted. The calculation in the PSR overstates the defendant's criminal history category. The defendant should more properly be criminal history category I. However, the court denies the defendant's motion for a two-level safety-valve adjustment because a reduction in criminal history category does not make him eligible for safety-valve relief. At any rate, the defendant has not shown that he satisfies the other requirements for application of the safety valve. At criminal history category I and base offense level 25, the defendant's Guidelines range of imprisonment is 57 to 71 months.

C. Section 3553 factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 36 months (three years), is sufficient, but not greater than necessary, to accomplish the goals of sentencing. The court will accordingly grant the defendant's motion for a sentence outside the Guidelines.

With respect to the nature of the offense, the court notes that distribution of methamphetamine is undoubtedly a serious offense. However, the record shows that the defendant's conduct was fueled by his addiction and there is no evidence that he was anything more than a small player in the methamphetamine distribution enterprise.

The defendant was gainfully employed for most of his life until he became addicted to methamphetamine. The record shows that the decision not to charge an offense with a mandatory minimum sentence of five years reflects the notion that a sentence shorter than five years is appropriate. An important consideration under the Guidelines market-based approach is where the defendant falls within the hierarchy of a drug distributing enterprise. There is no indication that the defendant was anything more than a bit player in a drug distribution enterprise. His drug-dealing conduct was largely the result of his addiction. In view of the defendant's limited role, the quantity determination does not serve as a reliable proxy for his culpability.

The court has also considered the history and characteristics of the defendant. He is a thirty-four-year-old man with a relatively short history of involvement with drugs. Other than this offense, he has essentially no criminal history. Most of the defendant's problems are linked to drug abuse. He was working consistently up to a short time before he was arrested on this offense.

The defendant's prospects for rehabilitation is also relevant to the determination of a reasonable sentence. A three-year sentence will provide the defendant the opportunity to undergo the BOP's 500-Hour Intensive Drug Treatment Program. The defendant has not had the opportunity to undergo residential treatment, although it has been recommended. The court appreciates the difficulty of overcoming an addiction to methamphetamine, but can envision a positive result for this defendant, since his addiction is relatively recent.

In formulating this sentence, the court has considered the sentencing range established by the Guidelines, but, because the drug offense Guidelines were

promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines. Under the Guidelines market-based scheme, quantity can be one measure of the seriousness of a drug offense, but it is not always a trustworthy measure of the culpability of an individual defendant. To sentence the defendant to the term advocated under the defendant's weight-driven scheme would exaggerate his culpability.

This sentence also satisfies the purposes of sentencing. The court finds that a sentence including some period of incarceration is necessary to achieve the goals of sentencing and to establish some level of proportionality with respect to other drug trafficking crimes and to reduce the perception of unwarranted disparity. A sentence of 36 months reflects the seriousness of the offense, promotes respect for the law and provides just punishment. This is a significant sentence for a defendant who has not served any significant amount of time in prison. A three-year sentence is sufficient to deter others from engaging in similar criminal conduct. The value of any additional prison time as a deterrent would be marginal.

A Judgment in accordance with the Sentencing Memorandum will issue this date.

Dated this 3rd day of March, 2014.

                                            BY THE COURT:

                                            s/ Joseph F. Bataillon
                                            United States District Judge